IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN JOSHUA LAY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 09-0075-WS-M |
| | ) |
| SCOTT D. HIXON, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter comes before the Court on Defendants' Motion to Stay (doc. 14). The Motion has been briefed and is ripe for disposition.

**I.    Background.**

In August 2008, a 40-foot work barge belonging to one or both defendants, Scott D. Hixson and Gulf Bay Marine Construction, LLC, disappeared from Long Bayou, off the Intracoastal Waterway in Orange Beach, Alabama.[1] Perhaps the barge drifted away of its own accord. Or perhaps its mooring lines were cut and it was stolen. Either way, the parties appear to concur that plaintiff, John Joshua Lay, came to be in possession of the barge and caused it to be transported to and secured at his address in Elberta, Alabama. On or about August 28, 2008, Lay contacted Hixson, indicated that he had the barge, and requested a monetary payment (which the parties have variously characterized as a salvage award, a recovery fee, or extortion).

Hixson had already reported the barge as stolen; however, upon receipt of Lay's call, Hixson reported this development to law enforcement officials. The next day, Lay was arrested. On November 21, 2008, Lay was indicted in the Circuit Court of Baldwin County for theft of

---

[1] Although the Court has previously brought the matter to the parties' attention, their filings continue to be plagued by inconsistent spelling of defendant Scott Hixson's name, with plaintiff referring to him as "Hixon" and defendants calling him "Hixson." The correct spelling of this defendant's surname can and should be readily ascertainable. Upon the lifting of the stay, the Court expects plaintiff to undertake reasonable measures to verify the proper spelling of this defendant's name and, if needed, promptly request leave to amend his pleadings to make appropriate corrections, so as to alleviate this distraction.

property in the first degree, in violation of Alabama Code § 13A-8-3, stemming from the August 2008 incident involving the Hixson / Gulf Bay barge. Two other individuals, Benjamin Lewis Hamilton and Carl Nicholas Poole, were also arrested and indicted in connection with that incident. At present, criminal proceedings against Lay, Hamilton and Poole remain ongoing in state court. No trial date has apparently been set for Lay or Hamilton, but Poole's case has been set for jury trial in September 2009.

On February 17, 2009, nearly six months after his arrest and three months after the state-court indictment, Lay filed the Complaint (doc. 1) in this District Court seeking a salvage award under general maritime law.[2] According to the well-pleaded allegations of the First Amended Complaint (doc. 7-2), Lay discovered the barge adrift in Long Bayou, secured it, and endeavored to locate the owner and to pursue a claim for salvage. The First Amended Complaint alleges that Hixson and/or Gulf Bay caused Lay to be arrested, and suggests that his arrest prevented Lay from initiating a timely state salvage claim. In light of these allegations, the First Amended Complaint requests that Lay be granted a salvage award under general maritime law of up to 25% of the value of the barge from the *in personam* defendants.[3] Hixson and Gulf Bay have both been joined as defendants because of uncertainty as to which of them owns the barge.

Thus, at present there are two parallel pending actions relating to the disappearance and recovery of the barge. In the state-court criminal proceedings, Lay (plus two co-defendants, Hamilton and Poole) is charged with stealing the barge. In this federal civil action, however, Lay seeks a salvage award from the barge's owner(s) on the theory that he did not steal the barge, but rather that he found the barge in a state of marine peril, from which he rescued it. Each case is the factual flip side of the other. Defendants now ask that this action be stayed pending the conclusion of the overlapping criminal proceedings. Lay opposes that request.

---

[2] "In order to establish a claim for a salvage award, a potential salvor must demonstrate (1) the existence of a maritime peril from which the property could not have been saved without the salvor's assistance; (2) a voluntary act on the part of the salvor; and (3) the salvor's success in saving the property." *Cape Ann Towing v. M/Y "Universal Lady"*, 2008 WL 647095 (11th Cir. Mar. 11, 2008) (citations omitted).

[3] Lay maintains that the value of the barge is approximately $49,000; thus, it appears that he seeks a salvage award in the neighborhood of $12,000.

**II.     Analysis.**

   ***A.     Legal Standard for Staying Civil Action Pending Conclusion of Parallel Criminal Proceedings.***

It is well-settled that "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *see also Dominguez v. Hartford Financial Services Group, Inc.*, 530 F. Supp.2d 902, 905 (S.D. Tex. 2008) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation ...."); *Utah v. Eli Lilly and Co.*, 509 F. Supp.2d 1016, 1019 (D. Utah 2007) (recognizing discretion to stay proceedings to save time and effort for parties and court). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Thus, in determining whether a stay is appropriate in a particular case, "the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side." *Feld Entertainment, Inc. v. A.S.P.C.A.*, 523 F. Supp.2d 1, 3 (D.D.C. 2007) (citations omitted).

Absent special circumstances, the mere existence of parallel criminal and civil proceedings does not mandate entry of a stay of the latter. *See, e.g., United States v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) ("a court must stay a civil proceeding pending resolution of a related criminal prosecution only when special circumstances so require in the interests of justice"); *U.S. ex rel. Gonzalez v. Fresenius Medical Care North America*, 571 F. Supp.2d 758, 762 (W.D. Tex. 2008) ("a mere relationship between civil and criminal proceedings and the prospect that discovery in the civil case could prejudice the criminal proceeding does not necessarily warrant a stay"). Nonetheless, district courts are vested with substantial discretion to stay the civil proceedings in deference to the parallel criminal action where the interests of justice favor doing so. *See, e.g., GLL GmbH & Co. Messeturm KG v. LaVecchia*, 247 F.R.D. 231, 233 (D. Me. 2008) ("It is within the Court's discretion whether to stay civil litigation in deference to parallel criminal proceeding, and it is to be exercised along

prudential lines and only where the interests of justice counsel in favor of the stay."); *Dominguez*, 530 F. Supp.2d at 905 (recognizing district courts' "authority to stay a civil proceeding pending the resolution of a criminal proceeding when the interests of justice so require"); *Chagolla v. City of Chicago*, 529 F. Supp.2d 941, 945 (N.D. Ill. 2008) (similar); *Chao v. Fleming*, 498 F. Supp.2d 1034, 1037 (W.D. Mich. 2007) ("While nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment, a court still has broad discretion in determining whether to stay a civil action while a criminal action is pending or impending.").

In exercising that discretion, courts balance the interests of the parties, the courts and the public, including "1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest." *Fleming*, 498 F. Supp.2d at 1037 (citation omitted).[4] Although many factors are relevant, "the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Dominguez*, 530 F. Supp.2d at 906-07; *see also Fleming*, 498 F. Supp.2d at 1039 (degree of overlap is "the most important factor" because absent such

---

[4] *See also S.E.C. v. Nicholas*, 569 F. Supp.2d 1065, 1069 (C.D. Cal. 2008) (relevant factors in exercising discretion include prejudice to plaintiffs of a delay, burden of proceedings on defendants, efficient use of judicial resources, interests of persons not parties to the civil action, interest of the public in the civil and criminal proceedings, and criminal defendant's Fifth Amendment rights); *Dominguez*, 530 F. Supp.2d at 905 (enumerating factors as including degree of overlap between civil and criminal cases, whether indictment has been issued, prejudice to plaintiff caused by delay, burden on defendants, and interests of court and public); *Chagolla*, 529 F. Supp.2d at 945 (non-exclusive list of factors considered in evaluating stay request includes whether civil and criminal matters involve same subject, whether government entity prosecuting criminal case is also party in civil case, posture of criminal proceeding, pubic interest, potential prejudice to plaintiff from delay, and burden on defendants if stay is denied); *International Floor Crafts, Inc. v. Adams*, 529 F. Supp.2d 174, 176 (D. Mass 2007) (considering "1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed, 2) the private interests of and burden on the defendant, 3) the convenience to the courts, 4) the interests of persons not parties to the civil litigation and 5) the public interest") (citation omitted).

overlap there would be no need for a stay) (citations omitted).[5]

### B.     Application of Legal Standard.

Upon weighing the relevant factors and interests here, the Court is convinced that granting a stay of this action pending resolution of the state-court criminal proceedings is appropriate.  As a threshold matter, the factual overlap between the two cases is considerable. By all appearances, the Baldwin County criminal proceedings against Lay hinge on the factual question of whether he stole the barge (in which case he is guilty of theft of property in the first degree under Alabama law) or whether he found it adrift and rescued it from marine peril (in which case he is not).  That same question appears dispositive in this salvage action.  After all, if Lay engaged in misconduct or acted in bad faith with respect to the barge, then he would have no entitlement to a salvage award under well-settled maritime law.[6]  Clearly, then, the identity of key factual issues joined in the criminal prosecution and in these maritime proceedings counsels

---

[5]    In opposing the stay, Lay argues (with minimal citations to authority) that the relative timing of the criminal and civil proceedings is of central importance.  In particular, he suggests that if the civil case comes first, then a stay may not be appropriate pending a later criminal action.  The case law does not support Lay's efforts to impute primacy to the order of origination of the criminal and civil actions.  Even if it did, the fact remains that Lay was indicted almost three months <u>before</u> he filed this salvage action, such that the criminal action began well before (and is far nearer to completion than) this case.

[6]    *See, e.g., Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 675-76 (5th Cir. 2000) ("A salvor obviously will not receive an award if he ... acts in bad faith."); *Jackson Marine Corp. v. Blue Fox*, 845 F.2d 1307, 1309 (5th Cir. 1988) ("Admiralty courts have traditionally been vigilant in protecting mariners from unscrupulous and dishonest salvors."); *Continental Ins. Co. v. Clayton Hardtop Skiff No. NJ 2281 B.*, 367 F.2d 230, 236 (3rd Cir. 1966) ("If [putative salvor] is found guilty of misconduct he, of course, is not entitled to the benefits of a salvor's position."); *The Pine Forest*, 129 F. 700, 703 (1st Cir. 1904) ("The authorities are overwhelming that ... there can be no salvage reward to a vessel or individual with reference to a condition arising from the fault of that vessel or individual.  This is not merely technical, but is recognized everywhere as fundamental."); *The Snow Maiden*, 155 F. Supp. 518, 521 (D. Mass. 1957) ("The general rule is that where a salvor is guilty of willful misconduct or bad faith, a court, depending on the precise circumstances, will deny or diminish the salvage award."); *Higgins, Inc. v. The Tri-State*, 99 F. Supp. 694, 698 (S.D. Fla. 1951) ("any right to compensation for salvage [is] forfeited or reduced in amount in cases where salvors have taken advantage ... of the unfortunate by embezzlement of salved property, gross exaggerations of values and dangers, false representations of material matters, or other acts of misconduct").

in favor of a stay.

Another important factor in the stay calculus is the private interests and burdens on the defendants herein, Hixson and Gulf Bay. If the criminal charges against Lay are substantiated, then Hixson and Gulf Bay are victims of a felonious act. To require those victims to accrue considerable legal fees (potentially several times the modest salvage amount sought by Lay) defending themselves in a salvage lawsuit brought by a person who has been indicted for stealing their barge would be to heap insult atop injury. That is not to say, of course, that the Court has formed any opinions about how the barge came to be in Lay's possession. The undersigned has not done so, and has not even a preliminary impression as to the merit of the charges against Lay. But if those charges are found to be valid, then the incremental burden on two innocent owners (Hixson and Gulf Bay) of having to defend themselves in a baseless salvage action in the interim would be both onerous and unnecessary.

By contrast, the prejudice to Lay if this action is stayed pending the outcome of his criminal proceedings appears negligible. To be sure, Lay has made vague and unsubstantiated allusions to the "overriding prejudice" he claims he would sustain if the status quo herein were frozen pending resolution of the Baldwin County proceedings. It is extraordinarily difficult, however, to imagine how he would be prejudiced by a stay. Given that the indictment is more than five months old and that the trial date of one of his co-defendants has been set for September 2009, it appears likely that Lay will be tried on the theft charges within the next several months. Thus, any stay of this action will likely be of a short duration (*i.e.*, no more than a few months). Moreover, as noted *supra*, the amount in controversy herein is relatively small. As such, even if Lay is correct that he did not steal the barge and that he is entitled to a salvage award, a brief delay in entry of a salvage award in this action would be unlikely to visit substantial financial hardship upon him, simply because the monetary stakes are relatively low. If anything, it appears that delaying this salvage action until the conclusion of the criminal proceedings will redound to Lay's benefit, not to his detriment, by allowing him to participate freely in discovery herein, and to call Hamilton and Poole as witnesses, without fear that the ensuing statements and testimony will be used against him in the criminal case. Based on these considerations, then, Lay's bald claim of prejudice is inscrutable and appears ungrounded in fact or law.

The interest of the courts is another factor that favors a stay in this case. If the criminal proceeding is resolved adversely to Lay, then such an adjudication may have preclusive effect here, thereby obviating altogether the need to litigate this salvage action. *See, e.g., American General Life Ins. Co. v. Jones*, 2008 WL 4949847, *5 (S.D. Ala. Nov. 13, 2008) (noting that party's theory of recovery in interpleader action "may (or may not) be conclusively resolved by the pending criminal proceedings," such that "the interests of efficiency and conservation of scarce judicial resources weigh in favor of allowing the state criminal proceedings ... to run their course before embarking on the time-consuming and expensive process of litigating these civil proceedings").[7] Rather than devoting scarce judicial resources to a salvage action that may (or may not) be mooted within a short time by parallel criminal proceedings in state court, a far more sensible approach would be to stay this action to allow the criminal case to reach a resolution.

Finally, the interests of the public and third parties also favor the granting of defendants' request for a stay. As mentioned *supra*, there are two co-defendants, Hamilton and Poole, in the Baldwin County criminal action. Although they are not parties herein, Hamilton and Poole are likely to be key witnesses in these salvage proceedings. Even if Lay is willing to waive his Fifth

---

[7] The Court recognizes that the *Jones* case may be differently situated than the case at bar because in *Jones* there was an Alabama statute providing that if the interpleader claimant were convicted in the criminal case of the felonious and intentional killing of the insured, then her interest in recovery of the interpleaded funds would be extinguished. *See Jones*, 2008 WL 4949847, at *5 n.7. Here the parties have not identified any comparable statute; nonetheless, there is binding authority for the proposition that "[t]he use of a criminal conviction as conclusive of an issue in subsequent civil litigation ... is well established today." *Matter of Raiford*, 695 F.2d 521, 523 (11th Cir. 1983); *see also In re Financial Federated Title and Trust, Inc.*, 347 F.3d 880, 886 n.5 (11th Cir. 2003) (recognizing authorities applying "[c]oncept of collateral estoppel ... to prevent relitigation of issues subsequently brought in a civil suit to the related issues determined in the criminal proceedings"); *United States v. Satterfield*, 743 F.2d 827, 838 (11th Cir. 1984) (citing "rule in this and other circuits that a criminal conviction may be used as conclusive proof of some issues in a subsequent civil litigation"). Accordingly, it appears likely that if Lay is adjudicated guilty in the criminal proceedings, then that determination would collaterally estop him from litigating the theft/salvage issue in this action. If such an eventuality should come to pass in the criminal proceedings, the parties will of course be given a full opportunity to brief the issue of whether and to what extent that state-court outcome is entitled to preclusive weight here.

Amendment privilege against self-incrimination in this case (which is far from clear based on his noncommittal response to the Motion to Stay),[8] it seems likely that Hamilton and/or Poole will invoke their Fifth Amendment privilege, thereby delaying and encumbering discovery herein. By waiting until the criminal proceedings are concluded before moving forward with discovery, the timely and full participation of Hamilton and Poole in depositions can be secured with greater ease and without the risk of incriminating them.

### III.   Conclusion.

In short, after careful balancing of the relevant interests and potential harms, the Court is persuaded that the exercise of its discretion in favor of staying this action is appropriate. Accordingly, Defendants' Motion to Stay (doc. 14) is **granted**. This action is **stayed** pending resolution of the Baldwin County Circuit Court criminal proceedings against John Joshua Lay bearing criminal case number CC-2008-003181.00. That said, the Court will not authorize an indefinite stay, but will instead monitor the criminal proceedings closely to ensure that this stay remains in place no longer than necessary. In that regard, Hixson and Gulf Bay (as the movants and catalysts for the stay) are **ordered** to file status reports every **60 days**, with the first such report to be due on or before **June 1, 2009**. Those reports must, at a minimum, state the current posture of the state-court proceedings, including any trial setting and other deadlines that might reasonably bear on the propriety of a continuing stay in this case. Additionally, Lay is **ordered** to notify the Court promptly in writing upon the conclusion of the Baldwin County Circuit Court action, and to delineate the nature of that resolution and his position as to its impact on these proceedings.

DONE and ORDERED this 12th day of May, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[8] In particular, Lay indicated in his brief that the Fifth Amendment privilege "has not been asserted by Plaintiff" (doc. 17, at 4) to this point, without offering any affirmative representations, promises or guarantees that he would not do so (as is his absolute right) upon being served with written discovery requests or being asked difficult questions during a deposition herein.