IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN JOSHUA LAY,                          )
                                          )
         Plaintiff,                       )
                                          )
v.                                        )    CIVIL ACTION 09-0075-WS-M
                                          )
SCOTT D. HIXON, *et al.*,                 )
                                          )
         Defendants.                      )

## ORDER

This action comes before the Court on Defendants' Motion for Summary Judgment (doc. 86), Plaintiff's Motion to Strike (doc. 91), Plaintiff's Motion for Leave to File Sur-Reply (doc. 98), and Plaintiff's Motion to Certify Question to Alabama Supreme Court (doc. 99). These Motions are now ripe for disposition.

I.     **Relevant Background.**[1]

On or about August 26, 2008, a 40-foot homemade barge with an attached yellow Pittman crane (the "Barge") went missing from its moorage at Long Bayou near the Intracoastal Waterway in Orange Beach, Alabama. The barge was owned by defendant Gulf Bay Marine Construction, LLC ("Gulf Bay"), an Alabama limited liability company boasting defendant Scott D. Hixon as its lone member.[2] Approximately two days later, plaintiff John Joshua Lay called

---

[1]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party, resolving all reasonable doubts about the facts in favor of the non-movant. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences from the record are drawn in his favor.

[2]     From the outset of this case, defendant Hixon has indicated that the proper spelling of his last name is "Hixson." Despite notice of the error, plaintiff has not sought to amend the pleadings to identify this defendant by the correct spelling. Because plaintiff is the master of his complaint, this Court will identify the defendant as the pleadings do; however, the parties are expected to reach agreement as to the proper spelling of the defendant's name by the time they file their joint pretrial document, so that additional resources need not be expended on what should be a non-issue.

Hixon, indicated that Lay was in possession of the Barge, and demanded a "recovery fee" of $9,000.  (Doc. 94, at Exh. 3.)  In lieu of paying or negotiating with Lay, Hixon contacted the Marine Police Division of the Alabama Department of Conservation & Natural Resources.  (*Id.*)  In November 2008, a Baldwin County Circuit Court grand jury handed down an indictment charging Lay with one count of theft of property in the first degree, arising from this incident.[3]  Criminal proceedings styled *State of Alabama v. John Joshua Lay*, Case No. CC-08-3181 (the "Criminal Action"), took place in Baldwin County for more than three years.

On January 23, 2012, the State of Alabama filed a "Notice of Restitution" in the Criminal Action.  As amended, the Notice requested that restitution be ordered in favor of Hixon (who is listed as "victim" in the Notice) in the amount of $2,500, and indicated the State's position that "[t]his case will be *nolle prossed* upon payment of restitution and court costs."  (Doc. 89, Exhs. C, F, G.)  On January 25, 2012, Circuit Judge Partin entered an Order of Restitution, providing that Lay "is hereby ordered to pay restitution to the victims through the Clerk of Court" in the amount of $2,500 to Hixon.  (Doc. 89, Exh. D.)  The Order of Restitution further stated that Lay "has thirty (30) days from the date of this Order to object to the restitution amount entered in this case," in which event "the Court will set a hearing on this matter."  (*Id.*)  The record reflects that Lay did not object, but instead paid the restitution amount in full by no later than February 6, 2012.  (Doc. 89, Exh. E.)[4]

The Criminal Action did not happen in a vacuum.  Even as he was being prosecuted in state court for allegedly stealing the Barge, Lay initiated a civil action against Hixon and Gulf Bay in this District Court in February 2009 to recover a salvage award for that Barge.  The First

---

[3]	The precise language of the indictment charged that Lay "did knowingly obtain or exert unauthorized control over a barge, the property of Scott Hixon, … of the approximate aggregate value in excess of Two Thousand Five Hundred Dollars ($2,500.00), with the intent to deprive the owner of said property, in violation of § 13A-8-3 [of] the Code of Alabama."  (Doc. 97, Exh. H.)  The significance of the $2,500 amount is that it constitutes the lowest property value that can support the offense of first-degree property theft under Alabama law.  *See* Ala. Code § 13A-8-3(a) ("The theft of property which exceeds two thousand five hundred dollars ($2,500) in value, or property of any value taken from the person of another, constitutes theft of property in the first degree.").  Documentation in the summary judgment record estimates the total value of the barge and crane at $50,000.  (Doc. 94, at Exh. 2.)

[4]	According to the record, the total balance owed was $3,797.50, which presumably consisted of the $2,500 restitution award, plus court costs.  (Doc. 89, Exh. E.)

Amended Complaint alleged that Lay "discovered the said Barge floating adrift at Long Bayou," that he "secured the Barge at a public boat ramp" to prevent it from causing damage, that he hired movers to secure the Barge at his address in Elberta, Alabama, and that he engaged in good-faith efforts to locate the Barge's owner and claim a salvage award.  (*See* doc. 7, ¶¶ 6-9.) The pleadings confirm that Lay seeks a salvage award "under the general maritime law of the United States based on Plaintiff's successful actions in securing and safe keeping the adrift barge."  (*Id.*, ¶ 20.)[5]

Defendants now seek summary judgment on the maritime salvage claim that represents the sole cause of action joined herein.

## II.     Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual

---

[5]          As to the amount of the award, the First Amended Complaint alleges that the Barge's value is approximately $49,000, and that Lay seeks "salvage up to twenty five percent (25%) of the value of the Barge."  (*Id.*, ¶ 23.)  Thus, Lay and Hixon have been litigating their dispute, by and through retained counsel, in this District Court for more than three years, over a salvage claim valued at no more than $12,250.

determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### III.   Analysis.

Although there is some confusion in the briefing, defendants' Motion for Summary Judgment is confined to a single, discrete argument. Specifically, defendants contend that Lay is judicially estopped from recovering a salvage award against Gulf Bay and Hixon herein because of his position in the Criminal Action. That issue, and that issue alone, is before the Court on the pending Rule 56 Motion.[6]

"The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (citation and internal quotation marks omitted); *see also City of Riviera Beach v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet in Length*, 649 F.3d 1259, 1273 (11th Cir. 2011) ("Judicial estoppel is designed to prevent parties from making a mockery of justice by inconsistent pleadings.") (citation and internal quotation marks omitted). The decision to invoke this equitable doctrine is vested in the discretion of the trial court to safeguard the integrity of the judicial process. *See Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006); *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005).[7]

---

[6]   This clarification is important. The issue presented is <u>not</u> one of res judicata or collateral estoppel. Defendants' Motion does not ask this Court to construe the Order of Restitution in the Criminal Action, or to apply principles of issue or claim preclusion to forbid Lay from litigating his salvage claim here. Thus, plaintiff's discussion of the legal effect of the Order of Restitution is of no moment. *See generally In re Airadigm Communications, Inc.*, 616 F.3d 642, 662 (7th Cir. 2010) (citing authority for proposition that "theories of judicial estoppel draw from the fact of inconsistency rather than the fact of adjudication"). And plaintiff's characterization of the Rule 56 Motion as concerning "whether the effect of the Restitution Order … requires dismissal of this action" is inaccurate. (Doc. 99, at 1.) At issue is the effect of Lay's conduct in the other matter, not the effect of Judge Partin's Order of Restitution. Similarly, defendants' presentation of evidence that they contend supports a finding that Lay actually did steal the Barge will not be considered. Simply put, that factual matter is not relevant to the summary judgment motion. Again, the straightforward, narrow issue presented is whether principles of judicial estoppel forbid Lay from pursuing his salvage claim.

[7]   Because this action involves federal claims in federal court, the judicial estoppel issue raised herein is governed by federal law, without regard to Alabama state-law principles. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) ("In this case, judicial (Continued)

In applying this doctrine, courts have recognized that "the circumstances under which a court might invoke judicial estoppel will vary." *Robinson*, 595 F.3d at 1273; *see also Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) (indicating that enumerated factors "are not inflexible, or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case" when considering whether judicial estoppel applies). Nonetheless, "three factors typically inform the decision: (1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either first or second court was mislead and; (3) whether the party advancing the inconsistent position would derive an unfair advantage." *Robinson*, 595 F.3d at 1273 (citation omitted). "The first factor is crucial; without inconsistency there is no basis for judicial estoppel and no reason even to reach the other two factors." *City of Riviera Beach*, 649 F.3d at 1273; *see also Transamerica Leasing*, 430 F.3d at 1336 n.8 (recognizing that "doctrine of judicial estoppel … only applies to a party that actually made a prior inconsistent statement"). And many courts have insisted on the presence of a clear inconsistency, rather than one that is merely potential, theoretical, debatable, or colorable. *See Robinson*, 595 F.3d at 1273.[8]

---

estoppel is raised in the context of a bankruptcy proceeding and a federal employment discrimination case; therefore, federal law governs our analysis.").

[8] Indeed, the "clearly inconsistent" requirement is prevalent to the point of ubiquity in other circuits' jurisprudence. *See, e.g., In re Paige*, 610 F.3d 865, 876 (5th Cir. 2010) ("the party is judicially estopped only if its position is clearly inconsistent with the previous one"); *Comcast Corp. v. F.C.C.*, 600 F.3d 642, 647 (D.C. Cir. 2010) ("For judicial estoppel to apply, however, a party's later position must be 'clearly inconsistent' with its earlier position," and "[d]oubts about inconsistency often should be resolved by assuming there is no disabling inconsistency") (citations omitted); *Brown v. Watters*, 599 F.3d 602, 615 (7th Cir. 2010) ("in order for judicial estoppel to apply, the latter position must be clearly inconsistent with the earlier position") (citation and internal quotation omitted); *United States v. Smith*, 574 F.3d 521, 527 (8th Cir. 2009) ("In order to prevail on a claim of judicial estoppel, Smith must first establish that the government's position at his sentencing was clearly inconsistent with its earlier position") (citations and internal quotation marks omitted); *United States v. Villagrana-Flores*, 467 F.3d 1269, 1278 (10th Cir. 2006) (describing as "crucial" the requirement that "a party's later position must be clearly inconsistent with its earlier position" for judicial estoppel to attach) (citation omitted).

The requirement that there be a clear inconsistency proves to be an insuperable obstacle here.  To recap, Lay is pursuing this civil action for a salvage award against Hixon and Gulf Bay for purportedly rescuing their Barge from maritime peril in August 2008.  Obviously, no salvage award is owed to one who steals a vessel, thereby creating the very peril from which he "rescues" it.[9]  In the Criminal Action, Lay was prosecuted by the State of Alabama for a charge of property theft, first degree, based on allegations that he had knowingly obtained or exerted unauthorized control over the Barge.  Importantly, Lay neither entered a plea of guilty nor admitted wrongdoing or bad-faith conduct with respect to the Barge in that case.  Just as he denied guilt in the Criminal Action, Lay maintains here that he is entitled to a salvage award (which he would be eligible to receive only if his conduct with respect to the Barge were lawful and in good faith).  There is no inconsistency (much less a clear inconsistency) between Lay's denial of guilt in the Criminal Action and his claim for a salvage award in this case.

Notwithstanding the foregoing, defendants' theory is that an inconsistency arises from Lay's payment of restitution in the Criminal Action.  In particular, defendants assert that "Plaintiff Lay in this case is necessarily taking an inconsistent position by seeking to recover a salvage award for the very barge for which he previously paid restitution in the criminal action." (Doc. 87, at 4-5.)  But the Court perceives no fundamental inconsistency in Lay's position.  In the Criminal Action, Lay never agreed that he owed restitution for the Barge; indeed, the record presented here is devoid of any formal agreement or admission by Lay on this point.  There is

---

[9]     *See, e.g., Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 675-76 (5th Cir. 2000) ("A salvor obviously will not receive an award if he … acts in bad faith."); *The Pine Forest*, 129 F. 700, 703 (1st Cir. 1904) ("The authorities are overwhelming that … there can be no salvage award to a vessel or individual with reference to a condition arising from the fault of that vessel or individual."); *Northeast Research, LLC v. One Shipwrecked Vessel*, 790 F. Supp.2d 56, 87 (W.D.N.Y. 2011) ("The maritime code in respect to the allowance of compensation for salvage-services is based upon principles of universal equity and integrity. … As such, a salvage award must be supported by proof that the motives and proceedings of the libelants were in all respects lawful, in good conscience, and meritorious.") (citations and internal quotation marks omitted); *Odyssey Marine Exploration, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel*, 727 F. Supp.2d 1341, 1344 (M.D. Fla. 2010) (recognizing that the law of salvage "imposes duties of good faith, honesty, and diligence" on salvors, and that "exploitation of the salvaged property terminates the right to a salvage award") (citations omitted); *Lay v. Hixon*, 2009 WL 1357384, *3 (S.D. Ala. May 12, 2009) ("if Lay engaged in misconduct or acted in bad faith with respect to the barge, then he would have no entitlement to a salvage award under well-settled maritime law").

nothing to indicate why the State of Alabama filed the Notice of Restitution or why prosecutors were willing to *nolle prosse* the indictment if Lay paid restitution. It would be both speculative and improper for this Court to assume that Lay entered into a formal agreement with the State on that point. At most, then, the record establishes that Judge Partin ordered Lay to pay $2,500 in restitution in the Criminal Action, and gave Lay an opportunity to object. Lay elected not to file an objection, but instead timely paid the designated amount. The mere act of Lay's compliance with the Order of Restitution does not appear in any way to be "clearly inconsistent" with his position in this action that he is entitled to a salvage award from defendants. After all, by adhering to Judge Partin's Order, Lay was not admitting criminal wrongdoing, was not conceding that he had engaged in misconduct or bad faith that would disqualify him from receiving a salvage award, and was not stipulating that the State had proven or could prove its case against him. He was simply doing what the state-court judge had ordered him to do. No clear inconsistency can be conjured from these circumstances.[10]

---

[10]    Defendants' argument to the contrary rests heavily on the unpublished decision of *United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2010 WL 4688977 (E.D. Va. Nov. 10, 2010), in which the court found that judicial estoppel did apply. But that case is readily distinguishable. In *Bunk*, Smet and his company, Gosselin, were indicted. Thereafter, Smet (acting on his own behalf and that of Gosselin) entered into a plea agreement, pursuant to which the government agreed to bring an information against Gosselin only, Gosselin agreed to plead guilty to the information, and the government agreed to dismiss the indictment as to Smet and Gosselin. All of those events happened as planned, with Gosselin being sentenced to pay restitution of $865,000. The amount of that restitution was not a surprise, inasmuch as both Smet and Gosselin had agreed at the time of the initial plea agreement that the government's losses were $865,000 and that an order of restitution would be mandatory as to Gosselin's subsequent plea. Following Gosselin's sentencing and restitution order, however, Smet and Gosselin sought to contest the amount of the government's loss in other proceedings. The trial court found that judicial estoppel barred them from doing so, reasoning that (i) Smet and Gosselin's current position that the loss was less than $865,000 was inconsistent with their position in the initial plea agreement in the criminal case; (ii) the court sentencing Gosselin had "clearly accepted what it viewed as the Defendants' agreement and admissions concerning the loss amount of $865,000;" and (iii) defendants had benefited from their earlier position. *Id.* at *5. Defendants in this case liken Lay's actions to those of Smet in *Bunk*. Unlike Lay, however, Smet had entered into a formal agreement that the government had sustained $865,000 in losses, then sought to challenge the amount of those losses in a subsequent proceeding after having derived the benefit of his agreement that the loss amount was $865,000. For aught the record shows here, Lay never agreed to anything, much less formally stipulated to a specific dollar amount of loss in an earlier proceeding only to challenge that amount in a later proceeding. Upon examination, then, *Bunk* does not support defendants' position.

Even if there were such an inconsistency, defendants' judicial estoppel argument would not prevail because there is no indication that Lay said or did anything to mislead the state court in the Criminal Action, or that he used the inconsistency to persuade Judge Partin to rule in his favor.  In fact, the record does not show that Judge Partin entered any substantive rulings after Lay paid the restitution without objection.  If anything, the State (not the court) relied on Lay's actions by *nolle prossing* the Criminal Action once he remitted the subject funds.  In the absence of any inconsistency by Lay that misled the state court judge, judicial estoppel does not apply.  *See Warfield v. Stewart*, 2011 WL 2650872, *5 (11th Cir. July 7, 2011) (no judicial estoppel where parties adopting inconsistent position "never had the opportunity to persuade the district court to accept their earlier position because they were not prevailing parties," such that "the court was not mislead by their initial position").

The point is simple:  Judicial estoppel is designed "to prevent parties from making a mockery of justice by inconsistent pleadings."  *Burnes*, 291 F.3d at 1285.  Here, there is no mockery of justice.  The state court judge – acting at the behest of prosecutors, not Lay – ordered Lay to pay restitution.  Lay paid it.  He did not induce the court to impose such a restitution order, he did not go on record as vouching for the propriety of the restitution order, and he did not admit fault or wrongdoing.  In no way was Lay dishonest with the state court.  He simply complied with the restitution order once it was entered.  And the state court judge could not have been deceived because he did not do anything in response to Lay's compliance; rather, State prosecutors dropped the charges.  If anyone was "misled" here, it was the State, not the court.  But the doctrine of judicial estoppel does not exist to protect the interests of prosecutors or the integrity of the prosecutorial process.  On this record, the Court cannot find, and does not find, that Lay's conduct exhibits the kind of opportunistic flip-flopping, unfair whipsawing, or fast and loose gamesmanship with the courts that the equitable doctrine of judicial estoppel was designed to prevent.  Accordingly, judicial estoppel principles do not foreclose Lay from proceeding with this salvage action against Hixon and Gulf Bay.

## IV.    Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.    Defendants' Motion for Summary Judgment (doc. 86) is **denied** because the Court in its discretion finds that the equitable doctrine of judicial estoppel does not bar plaintiff from pursuing this salvage action;

2.      Because the Motion for Summary Judgment does not require resolution of novel or unsettled issues of Alabama state law, Plaintiff's Motion to Certify Question to Alabama Supreme Court (doc. 99) is **denied**;

3.      Because the Court need not consider the objected-to portions of Lt. Alex Smith's Declaration in order to rule on the Motion for Summary Judgment in its entirety, Plaintiff's Motion to Strike (doc. 91) is **denied**;

4.      Plaintiff's Motion for Leave to File Sur-Reply (doc. 98) is **granted**, and the proposed sur-reply (doc. 98-1) appended to that Motion is considered for any persuasive value it may have; and

5.      This case remains set for Final Pretrial Conference before the undersigned on **July 3, 2012** at **10:30 a.m.**, with non-jury trial to follow during the **August 2012** civil term.


DONE and ORDERED this 30th day of May, 2012.


s/ WILLIAM H. STEELE _____
CHIEF UNITED STATES DISTRICT JUDGE